ROBERT L. BANNERMAN, *Appellant,* v. SIDNEY J. CATTS, AS GOVERNOR, AND OTHERS, *Appellees.*

Opinion Filed July 3, 1920.

1. Chapter 6456 of the Acts of 1913, Laws of Florida, as amended by Section 1 of Chapter 7862 of the Acts of 1919, Laws of Florida, provides for the establishment of the "Everglades Drainage District," for the purpose of protecting the land embraced therein from the effects of water, for agritural and sanitary purposes, for the public convenience and welfare, and the public utility and benefit. It is well settled that the drainage and reclamation of swamp and overflowed lands are a proper exercise of legislative authority.

2. The provisions of Chapter 6456, Acts of 1913, Laws of Florida, as amended by Chapter 7862, Acts of 1919, Laws of

Florida, are not in conflict with Sections 20 and 21 of Article III of the Constitution of Florida. See also Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47.

3. The provisions of Chapter 6456, Acts of 1913, Laws of Florida, as amended by Chapter 7862 of the Acts of 1919, Laws of Florida, are not in conflict with Sections 1, 2, 3 and 5 of Article IX of the Constitution. The assessment made under the Acts herein involved is a special assessment for local benefits, and does not come within the Sections 1, 2, 3 and 5 of Article IX of the Constitution. See also Lainhart v. Catts, *supra*.

4. It being within the legislative power to establish, directly, a drainage district for legitimate public purposes, (Lainhart v. Catts, *supra*), it is also within the power of the Legislature to determine the amount of the benefits to be derived, and the necessity and advisability of the local assessment, and when this is done, it is conclusive, and not subject to review by the courts, unless it is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power; the Legislature may also fix the amount of taxation, define the boundaries of the district; reduce or raise the drainage tax assessed against the lands in the district, and may also divide the district into zones and provide for the amount to be levied in each zone, as well as determine the benefits to be derived by the lands in the different zones by the improvements proposed.

5. There are no allegations in the bill of complaint which would warrant the court in granting the relief prayed. It appears from the allegations of the bill that there are four and a half million acres of land in this drainage district, and that five acres of same belonging to appellant was hammock or upland, and would receive no benefit whatever from the proposed work of drainage and other improvements provided for in and by said Act. We cannot conclude from the allegations that the assessment made by the Legislature, directly, is so devoid of any reasonable basis as to be essentially arbitrary and an abuse of power.

6. Where the Legislature enacts a drainage law, like the one herein involved, it is not necessary for the lawmaking body to embrace in the Act a provision for any notice of hearing by the owners of the land in said drainage district prior to the enactment of the law. The Legislature is presumed to have performed its duty correctly and to have made an investigation for itself and determined for itself, before the passage of the Act, what lands should be embraced within the drainage district, and what assessment should be made, and what benefits would be received by the owners of the land. Where the district is created by the Legislature and the assessment made by that body, and all things done directly by the Legislature, as was done in this case, the Legislative will is supreme, and there can be no question of failure to give notice.

7. Chapter 6456, Laws of Florida, as amended by Chapter 6957, Laws of Florida, as amended by Chapter 7862, Acts of 1919, Laws of Florida, is not unconstitutional, and does not deprive the owners of the land in the said drainage district of their property without due process of law. See Lainhart v. Catts, *supra*.

8. There is nothing in Chapter 6456, Laws of Florida, as amended by Chapter 6957, Laws of Florida, relative to issuance of bonds and the assessment of taxes thereunder, nor in Chapter 7862, Laws of Florida, that would impair any of the rights of a purchaser of lands in the drainage district prior to the enactment of Chapter 7862, Laws of Florida, and there is nothing written in Chapter 6957, Laws of Florida, upon which it could be claimed that the rate of taxation on the land in the "Everglades Drainage District" were fixed permanently so that they could not be altered by direct Act of the Legislature in the passage of Chapter 7862, Laws of Florida. The matter of taxation is one which is always subject to change, and every person who purchases real estate in Florida, does so subect to the governmental power and authority to raise or change the taxes, to issue bonds, to create special tax school districts, to create special road and bridge districts, and to create drainage dis-

tricts, and any and all of which would have the effect of changing or increasing the rate of taxation.

9. The provisions of Chapter 6456, Laws of Florida, as amended by Chapter 6957, Laws of Florida, as amended by Chapter 7862, Laws of Florida, are not in conflict with Section 4 of Article IX of the Constitution which provides that "no money shall be drawn from the treasury except in pursuance of appropriations made by law." See Lainhart v. Catts, *supra.*

10. Chapter 6456, Laws of Florida, as amended by Chapter 6957, Laws of Florida, as amended by Chapter 7862, Laws of Florida, is not in conflict with Section 16 of Article III of the Constitution. The title to Chapter 6456, Laws of Florida, was involved in the case of Lainhart v. Catts, *supra,* and was upheld by the court in that case, and we can find no defect, or supposed defect, in the title to Chapter 6957, Laws of Florida, and Chapter 7862, Laws of Florida, that was not disposed of in that case. The title of the respective chapters mentioned clearly relate to the creation of a single district, and not a number of drainage districts throughout the State of Florida, and the language in the body of the Act is not inconsistent with anything contained in the title.

11. Chapter 6456, Laws of Florida, as amended by Chapter 6957, Laws of Florida, as amended by Chapter 7862, Laws of Florida, is not unconstitutional or invalid. It is claimed that the law interferes with the collection of the State and County taxes, and should be condemned. The claim is not well founded in fact, and counsel in their brief have offered no argument or authorities that would throw any light upon the subject. In the absence of any showing as to why and how the law interferes with the collection of State and County taxes, the court should not declare the law inoperative.

An Appeal from the Circuit Court for DeSoto County; Geo. W. Whitehurst, Judge.

Order affirmed.

*Atkinson* & *Burdine*, for Appellant;

*Glenn Terrell*, for Appellees.

WILSON, Circuit Judge.—Robert L. Bannerman, the complainant below, who is appellant here, filed his bill of complaint in the Circuit Court in and for the Twelfth Judicial Circuit of Florida, against the Commissioners of Everglades Drainage District, a corporation under the laws of the State of Florida, and against Cyril Baldwin, Tax Collector of DeSoto County, and H. G. Murphy, as Tax Assessor of DeSoto County, and G. Hunter Bryant, Tax Assessor of Lee County, and P. John Hart, as Tax Collector of Lee County, for the purpose of enjoining the said defendants from levying and collecting the Everglades District tax on certain lands of the complainant, which are alleged to be embraced within the limits of the Everglades Drainage District, and also for the purpose of praying the court to "declare Chapter 6456 of the Acts of 1913, as amended by 6957 of the Acts of 1915, as amended by Chapter 7862 of the Acts of 1919, Laws of Florida," to be unconstitutional and void.

The bill of complaint is quite voluminous and quotes in substance practically every section of the said chapters just above mentioned which are involved in this suit. As these laws are accessible to every one, we see no good reason for copying the said bill of complaint into this decision, but will only refer to such sections of the said chapters as may from time to time be considered neces-

sary in order to make this opinion intelligible. The bill alleges that about four and a half million acres of land are embraced in this Everglades Drainage District, and then proceeds to describe three parcels of land therein which the complainant alleges is his property. The first description designated as tract No. 1 is as follows:

The south half of the northeast quarter of the southeast quarter of section seven, in township forty south, range thirty-three east, containing twenty acres, more or less.

And the second description designated as tract No. 2 is as follows:

Beginning at the southeast corner of the northeast quarter of section twenty-five, in township forty-two south, of range twenty-nine east, thence run north four hundred and sixty-six feet; thence west four hundred and sixty-six feet; thence south four hundred and sixty-six feet; thence east four hundred and sixty-six feet to the point of beginning, containing in all five acres, more or less.

While that part described as tract No. 3 is as follows:

Beginning at the northwest corner of section twenty-nine, in township forty-three south, of range thirty-two east, thence run south four hundred and sixty-six feet; thence east four hundred and sixty-six feet; thence north four hundred and sixty-six feet; thence west four hundred and sixty-six feet to the point of beginning, containing five acres, more or less.

The bill further alleges, in substance, that as to the last tract above designated as tract No. 3, and containing five acres, more or less, against which there is a drainage tax assessed under the provision of the said laws of 25c that this five acres is dry hammock or upland, and cannot and

will not receive any benefit, whatever, from the proposed work by drainage and other improvements provided for and by said acts; and the bill further alleges that other of the complainant's aforesaid lands were partly swamp and overflow, but portions thereof are dry hammock lands and prairie lands, but the bill does not alleges what part of the complainants other lands are swamp and overflow, nor what parts high and dry.

It is also sought by said bill of complaint to test the validity of the bonds authorized to be issued under the provisions of the said chapters above mentioned; and it is further urged that the said acts of the Legislature, and the attempted levy, assessment and imposition of the said drainage taxes thereby provided, violate the Constitution of the State of Florida in the following particulars.

(1)   That the said acts are special or local laws, prohibited by Sections 20 and 21 of Article III of the Constitution, because

(a)   They regulate the duties of State officers in respect to a special and limited locality which is not coextensive with the limits of any County of the State or of the State and cannot under any circumstances be uniform in their operations throughout the State of Florida.

(b)   That said Acts, including Chapter 7862 of the Acts of 1919, Laws of Florida, impose upon the tax assessors and tax collectors of such counties as comprise the Everglades Drainage District, described in and prescribed by said Chapter 6456, as amended by Chapter 6957, as amended by Chapter 7862, of the Laws of Florida, special jurisdiction and duties not possessed by or conferred upon same officers in other counties.

(c) They provide for making and levying a special assessment of taxes and provide for the collection thereof for State and County purposes in such counties as comprise the said Everglades Drainage District established by said Chapter 6456, as amended by Chapter 6957, as amended by Chapter 7862 of the Laws of Florida.

(d) The drainage taxes provided for by said Acts are not imposed for any State, County or Municipal purpose.

(2) That the said Chapter 6456, as amended by Chapter 6957, as amended by Chapter 7862, of the Laws of Florida, violates Article 9 of the Constitution of the State of Florida, in that it defines and imposes a system of taxes, which

(a) Is not based on a uniform valuation or equal rate.

(b) Is imposed only upon a special class or description of property arbitrarily and without just cause or reason selected and designated therein or thereby, and not by any officer or officers of the State of Florida or of any county or municipality of said State.

(c) Is a tax imposed and levied by law and not so imposed in pursuance of law.

(d) Is not assessed, imposed or levied upon the principles established by the Constitution for State taxation.

(e) Is imposed without regard to the valuation of the property taxed.

(f) Arbitrarily divides the lands of the said district into four classes or divisions against which a different and discriminatory tax is imposed, except as to one of

12—Vol. 80

said classes or divisions, against which no tax is imposed.

(g)  Is based upon acreage and not upon valuation.

(h) . Is a specific tax imposed upon certain described lands in said district, whereas, under the provisions of the Constitution of the State of Florida, taxes upon lands can only be levied upon an ad valorem basis.

(i)  Levies and imposes a different tax upon different lands in the said district for the same purpose upon an acreage basis.

(j)  Provides that the money raised from said taxes shall be turned over to the State Treasurer without any appropriation thereof made by law in violation of Section 4 of Article 9 of the Constitution of Florida.

(3)  Under said Chapter 6456, as amended by Chapter 6957, as amended by Chapter 7856, Laws of Florida, the Legislature attempted to usurp the powers conferred by the Constitution upon other than legislative officers.

(4)  The Legislature is vested by the Constitution with power to provide for the assessment and levy and collection of taxes, and to provide regulations to secure a just valuation of property for taxation, but is vested with no power to impose or assess any but a license or occupational tax.

(5)  That the subject of the said Chapter 6456, or Chapter 6957, or Chapter 7862, of the Laws of Florida, is not properly expressed in its title, as required by Section 16 of Article 3 of the Constitution of Florida, because

(a)  The title of said Act relates to and contemplates a general law for the establishment of drainage districts throughout the State of Florida and the levy of taxes

thereon, whereas said Act establishes only a single drainage district by specific description and levies an annual acreage tax on certain lands in said district.

(b)   The title of said Acts indicate and assume a general law, whereas the body of said Acts is local and special in application.

(c)   The title of said Acts provide for the assessment of lands to be benefited by assessment of benefits and taxation, whereas the body of said Act does not provide for assessment of benefits, but levy and impose a special and local tax for a special and local purpose and authorizes the same to be included in State and County taxes, whereas the said Acts require the tax collector to collect such special and local tax along with said State and County taxes, thereby interfering with the collection of said State and County taxes.

(6)   Said Acts provide for the taking of private property by the said Board of Commissioners of Everglades Drainage District for the use of the said Board and of the said District without compensation prior to and without condemnation proceedings.

(7)   Said Acts assess and impose a special and local tax for a special and local purpose and authorize the same to be included in the State and County Tax Rolls and require the tax collector to collect such special and local tax along with said State and County taxes, thereby interfering with the collection of said State and County taxes.

(8)   Said Acts declare that the said tax is imposed for draining and reclaiming the lands in said District and protect the same from the effects of water for agricultural and sanitary purpose, for the public convenience and welfare, and for the public utility and benefit, where-

as great portions of the said lands in the said. Drainage District upon which said tax is imposed require no draining, reclaiming or protection from the effects of water and can in no wise be benefited by the proposed works to be constructed by the said Board in said District.

Said Acts and proceedings of the said Board of Commissioners of Everglades Drainage District and of the said defendant tax assessors and tax collectors thereunder violate Sections 1 and 4 of the Bill of Rights and Section 29 of Article 16 of the Constitution of the State of Florida, because

(1)    Said Chapter 6456, as amended by Chapter 6957, as amended by Chapter 7862, of the Laws of Florida, does not provide for any notice or hearing of your Orator or other owners of lands in said Drainage District, or for an opportunity of a hearing of your orator and of other owners of lands in respect to the selection of the lands assessed under said Acts or upon which the said acreage tax is imposed, and that the Legislature, under said Acts, has arbitrarily and without a hearing or opportunity for a hearing attempted to impose such acreage tax on lands of your Orator and other owners of lands within said District without regard to the condition, character, quality or value of such lands respectively.

(2)    The Legislature by the imposition of such tax has arbitrarily imposed upon lands of equal and uniform value in said District a different rate of taxation and exempted other lands within said District from any such tax.

(3)    Said Acts are void as being in contravention of divers provisions of the Bill of Rights and Constitution of the State of Florida, and therefore the said Legislature, the said Board of Commissioners of Everglades

Drainage District and the defendant tax assessors and tax collectors, in the levy and attempted levy and collection of said tax, are attempting to deprive your Orator of his said property without due process of law and are denying to your Orator the protection of the law.

(4)  That the said assessment, imposition and levy of taxes are not based upon benefits to the lands of your Orator, or upon any definite or stated principle or rule of taxation, and constitute a mere arbitrary exaction levied by said Legislature upon your Orator's aforesaid property in violation of the Constitution of the State of Florida.

(5)  The said Acts and each of them are all special laws which discriminate unequally between persons and property of the same condition, resulting in depriving your Orator of his property without due process of law and denying to him the equal protection of the law.

(6)  Said Acts do not levy and impose an equal and uniform acreage tax upon lands similarly and equally benefited by the improvements and proposed improvements to be constructed thereunder or upon all of the lands within said Drainage District, but only upon a special, arbitrarily selected, class or kind of property and at special and arbitrarily fixed rates of taxation.

(7)  That the said Acts and the proceedings of the said Board and of said tax assessors in attempting to levy said acreage tax upon the lands of your Orator in other respects denies to your Orator the equal protection of law and deprives him of due process of law.

(8)  That Chapter 7862, of the Acts of 1919, Laws of Florida, arbitrarily, and without regard to benefits to be derived from drainage, changes the boundaries of the

Everglades Drainage District, incorporates lands of your Orator and others therein, and imposes taxes thereon, though the said lands could never derive any benefit from being incorporated within the said District.

(9)    Chapter 7862, of the Acts of 1919, Laws of Florida, arbitrarily changes and materially enlarges the taxes and assessments imposed upon certain lands within the Everglades Drainage District of Florida, including the lands of your Orator, without due regard to the benefits to be derived from such increased taxation.

(10)    Chapter 6456, as amended by Chapter 6957, of the Laws of Florida, laid down specific provisions for the issuance of bonds and the assessment of taxes thereunder, while Chapter 7862, of the Laws of Florida, repeals all the provisions of the said Chapter 6456 as amended by Chapter 6957, of the Laws of Florida, relative to the issuance of bonds and the assessment of taxes, thereby impairing a vested right of your Orator and other purchasers of land within the Everglades Drainage District, they having purchased with the understanding that the rates of taxation were fixed thereon.

(11)    Chapter 7862, of the Laws of Florida, is in violation of Section 17 of the Bill of Rights and of the Constitution of Florida.

(12)    Chapter 7862, Acts of 1919, Laws of Florida, enlarges the Everglades Drainage District by making arbitrary extensions thereof, including narrow strips in the nature of pan-handles along each side of the several canals leading therefrom, such enlargements being made without any regard to drainage or benefits derived therefrom.

(13)    Your Orator purchased his said land with a fixed acreage price imposed thereon for drainage and

other purposes for a definite period, while Chapter 7862, of the Laws of Florida, arbitrarily imposes a different and much larger tax in violation of the rights of complainant.

(14)   The enlargements to the Everglades Drainage District under Chapter 7862, of the Laws of Florida, while including lands of your Orator herein described, includes the lands of others, a large portion of which are among some of the highest pine lands in the State that could under no circumstances be benefited by the drainage operations provided therefor.

(15)   Chapter 7862, of the Laws of Florida, revises the tax scheme for drainage purposes upward on the lands of your Orator as imposed under Chapter 6456, as amended by Chapter 6957, of the Laws of Florida, such revision and imposition of the said tax as provided in said Chapter 7862 being equivalent to a confiscation of the lands of your Orator.

(16)   Chapter 7862, of the Laws of Florida, deprives your Orator of vested rights granted to him under the provisions of Chapter 6456, as amended by Chapter 6957, of the Laws of Florida.

(17)   Chapter 7862, of the Laws of Florida, is in other respects arbitrary, unconstitutional and violative of the rights of your Orator and others in like situation.

It will be noted that the complainant does not allege any irregularity or improper conduct of the members of the Board of Everglades Drainage District, or upon the part of the assessors and collectors who are joined as defendants, but the sole attack is upon the constitutionality of the said acts of the Legislature of 1913, and amendatory Acts subsequent thereto.

The defendants demurred to the bill of complaint, which demurrer, omitting the formal beginning and conclusion, embraces the following grounds:

1.

That the complainant in and by his said bill has not stated a cause of action on which the relief sought therein can be granted.

2.

It appears from the allegations in the said bill of complaint exhibited herein that the complainant is not entitled to the relief prayed for, or in fact to any relief.

3.

It is not made to appear from the allegations in the bill of complaint that Chapter 6456 of the Acts of 1913 or any of the amendments thereof are violative of sections 20 and 21 of Article 3 of the Constitution of the State of Florida as charged in the said bill.

4.

It affirmatively appears from the allegations in the said bill that Chapter 6456 of the Acts of 1913 or any amendment thereto is not violative of Sections 20 and 21 of Article 3 of the Constitution of the State of Florida.

5.

It is not made to appear in the said bill of camplaint that Chapter 6456 of the Acts of 1913 or any amendment thereof is violative of Article 9 of the Constitution of Florida or any section or part thereof.

6.

It affirmatively appears from the allegations in the said bill of complaint that neither Chapter 6456 of the Acts of 1913 or any amendment thereof is violative of Article 9 of the Constitution of Florida or any section or paragraph thereof.

7.

It is not made to appear from the allegations in the said bill of complaint that Chapter 6456 of the Acts of 1913 or any amendment thereof is in violation of Section 16 of Article 3 of the Constitution of Florida as charged in the said bill.

8.

It affirmatively appears from the averments of the bill of complaint exhibited herein that neither Chapter 6456 of the Acts of 1913 or any amendment thereto contravenes Section 16 of Article 3 of the Constitution of Florida as charged in the said bill.

9.

It is not made to appear from the allegations in the said bill of complaint that Chapter 6456 of the Acts of 1913 or any amendment thereof is violative of Sections 1 and 4 of the Bill of Rights of the Constitution of Florida.

10.

It affirmatively appears from the allegations in the bill of complaint exhibited herein that neither Chapter 6456 of the Acts of 1913 or any amendment thereof is violative of Sections 1 and 4 of the Bill of Rights of the Constitution of the State of Florida as charged in the said bill.

11.

It is not made to appear from the allegations in the bill of complaint exhibited herein that Chapter 6456 of the Acts of 1913 or any amendment thereof is violative of Section 29 of Article 16 of the Constitution of the State of Florida as charged therein.

12.

It affirmatively appears from the allegations in the bill of complaint that neither Chapter 6456 of the Acts of 1913 or any amendment thereof is obnoxious to Section

29 of Article 16 of the Constitution of the State of Florida.

13.

It is not made to appear from the allegations of the bill of complaint exhibited herein that Chapter 6456 of the Acts of 1913 or any amendment thereto is in conflict with any provision of organic law.

14.

The tax or assessment complained of is imposed upon the lands of complainant and all other lands in the Everglades Drainage District to accomplish those results which are conducive to public health and the public welfare and convenience of the people of the State of Florida, and our constitutional provisions defining equality and uniformity of tax burdens are not applicable to such tax or assessment.

15.

The tax or assessment referred to in the bill of complaint is imposed for the benefit of the lands in the Everglades Drainage District of Florida in order that the said district may be made habitable and useful, and the imposition of such tax or assessment is not prohibited by any provisions of Article 9 of the Constitution of Florida.

16.

The tax or assessment complained of is a special assessment for local benefits which is not obnoxious to any provision of the State or Federal Constitutions.

17.

The State and Federal Constitutions have no reference to special assessment and where the legislative will is not thus restricted it may impose such assessment as within its judgment is proper.

18.

It affirmatively appears from the allegations in the

bill of complaint that Chapter 7862 of the Laws of Florida did not impair any vested right of the complainant herein nor in said Chapter 7862 in violation of any provision of the Constitution of this State.

19.

The allegations in the bill of complaint do not show that Chapter 7862 of the Acts of 1919, Laws of Florida, changed or altered the boundaries of the Everglades Drainage District without regard to drainage benefits or in a manner that would in any way prejudice or affect any vested right of the complainant.

20.

Chapter 6456 and Chapter 7862, of the Laws of Florida, affirmatively show that the Legislature of this State had the authority and discretion to at any time it saw fit enlarge, reduce or change the boundaries or assessments imposed on the lands within the Everglades Drainage District so long as vested rights were not materially affected.

21.

It affirmatively appears from the allegations in the bill of complaint that no right given the complainant under Chapter 7862 or Chapter 6456 or any amendments thereto have been arbitrarily affected and that in all things pertaining to the said Everglades Drainage District and the interest of property holders therein the Legislature of the State has at all times acted within the discretion imposed and vested in it.

On the 28th day of February, 1920, the chancellor entered an order sustaining the demurrer to the bill of complaint, and allowing until the rule day in March, 1920, to amend the bill. The complainant did not amend, but entered his appeal to this court. The only assign-

ment of error is that the court erred in sustaining the demurrer of the defendants to the complainant's bill of complaint.

Chapter 6456, of the Acts of 1913, Laws of Florida, as amended by Section 1 of Chapter 7862, of the Acts of 1919, Laws of Florida, provides for the establishment of the "Everglades Drainage District," for the purpose of protecting the lands embraced therein from the effects of water, for agricultural and sanitary purposes, and for the public convenience and welfare, and for the public utility and benefit. This section then proceeds to describe the lands to be embraced within the said drainage district.

It is too well settled to admit of any argument that the drainage and reclamation of swamp and overflow lands are a proper exercise of legislative authority. Lainhart vs. Catts, et al, 73 Fla. 735; Hagar vs. Reclamation District 108, 111 U. S. 701; Fallbrook Irrigation District vs. Bradley, 164 U. S. 112; Neal vs. Vansicke, et al, 100 N. W. 200; Houck vs. Little River Drainage District, 239 U. S. 254; Mittman vs. Farmer, et al, 1915C Ann. Cas., page 1; Stewart vs. DeLand Lake Helen Road and Bridge District, 71 Fla. 158; Hopkins vs. Special Road & Bridge District No. 4, 73 Fla. 241; Kroegel, et al, vs. Whyte, et al, 62 Fla. 527. In this case this power, inherent in the Legislature, is not denied, but it is claimed that the power was not exercised in harmony with the constitutional provisions of this State. Appellant claims that the provisions of Chapter 6456, Acts of 1913, Laws of Florida, as amended by Chapter 7862 of the Acts of 1919, Laws of Florida, are in conflict with sections 20 and 21 of Article 3 of the Constitution of Florida, the basis of his claim being that these are special or local acts within

the meaning of the Constitution and are, therefore, void. We do not think this position is tenable. The same question was directly involved in the case of Lainhart vs. Catts, et al, 73 Fla., and was disposed of by this court on page 748 of said report adversely to the contention of counsel for appellant, and no good reason has been advanced why this former decision should be modified.

It is claimed that the statute creating and governing the Everglades Drainage District violates that part of Section 20 of Article 3 of the Constitution prohibiting the Legislature from passing local or special laws, relative to the jurisdiction and duties of any class of officers, excepting municipal officers, and regulating fees of officers of the State and County. It must be remembered that the drainage district in question is established directly by the Legislature of the State, its creation not being delegated to any local boards or commissions, and that the assessments or charges upon the land are fixed and imposed directly by the Legislature and are not left to the judgment or discretion of any board or commission to be ascertained and fixed. We have already passed upon this question in Lainhart vs. Catts et al., *supra,* holding that "the duties and jurisdiction or power of the officers in question do not differ in nature or kind from those of a like class of officers in the State; the difference is in degree, not kind." We also said "the establishment of the drainage district being within, and a valid exercise of, the legislative power, the duties and compensations provided for by these acts are "a mere incident to and the necessary concomitant with the power" we have held above to exist in the Legislature to establish the drainage district and to carry out the purpose for which it was established." Lainhart vs. Catts et al., *supra;*

Kroegel vs. Whyte, 62 Fla. 527. Having already upheld the law on this point, we find no occasion to change our opinion.

It is further claimed by the appellant that the said acts violate the provisions of Sections 1, 2, 3 and 5 of Article 9 of the Constitution in that they provide for taxation which is not based upon a uniform and equal rate. This court several times has held that there is no express provision in the State Constitution as to special assessments, nor is there any express provision therein as to the formation of taxing districts for particular purposes. Stewart vs. DeLand-Lake Helen Road and Bridge District, 71 Fla. 158; Edwards vs. City of Ocala, 58 Fla. 217. Lainhart vs. Catts et al., 73 Fla., text page 749; and the statutes creating taxing districts for the purpose of providing for construction and maintenance of public highways and the drainage of lands are within the power of the Legislature to enact and there is no constitutional inhibition against such enactments, for where a statute does not violate the Federal or State Constitution the Legislative will is supreme and its policy is not subject to review by the court, whose province is not to regulate, but to effectuate the policy of the law as expressed by valid statutes." State vs. Atlantic Coast Line Ry. Co., 56 Fla. 617; Davis vs. Fla. Power Co., 64 Fla. 246. The assessment made under the Act here involved is a special assessment for local benefits, and does not come within the provisions of Sections 1, 2, 3 and 5 of Article 9 of the Constitution. It is further claimed that the levy is made arbitrarily and without regard to the benefit which might be derived. We have already held in Lainhart vs. Catts et al., *supra*, that Sections 2, 3 and 5 of Article 9 of the Constitution apply only to general taxation for State, County and Municipal purposes, and have no reference

to special assessments for local purposes. In creating this drainage district the Legislature has divided the lands into districts, upon which the taxes are levied, into four classes or zones for the purpose of apportioning such tax burden in proportion to the special benefits which said lands will receive from the proposed improvements. As was said in Lainhart vs. Catts et al., *supra,* "while the rate varies as to each zone, yet it is equal and uniform as applies to every acre in each zone; no discrimination in favor of any particular acre or tract in any one class or zone being made. Whether or not this method of apportionment is the most just and equitable that can be devised, it is not within the province of the judiciary to determine." True whether the tax be a special assessment for local improvements, or whether it be for general taxation, the taxes must be uniform in the sense that it must be imposed upon the property subject to taxation or special assessment, so that the burden or charge on every parcel of land will bear a just proportion as that imposed on every other; Lainhart vs. Catts et al., *supra* However, it is presumed that the Legislature in enacting the statute duly performed its duty. There being no constitutional prohibition against the passage of such statute, the act is valid, and the Legislature was, and of necessity must have been, the judge of the amount of taxes to be levied in each zone; the number of zones to be provided for, and the benefits to be derived from the lands in the different zones by the improvements proposed. Having done this it is not within the province of the Court to substitute its will for the will of the Legislature. "The Court must assume that in imposing local assessments, whereby the value and desirability of the land will be increased, the Legislature designed to distribute the cost thereof upon the land in proportion to the spe-

cial benefits it would receive from the system of improve-
ments." Lainhart vs. Catts et al., *supra*. It is a well-set-
tled principle that the legislative determination of the
benefits derived, or the necessity and advisability of a lo-
cal or special assessment is conclusive and not subject to
review by the courts unless it is so devoid of any reason-
able basis as to be essentially arbitrary and an abuse of
power. Hagar vs. Reclamation District No. 4, *supra;*
Spencer v. Merchant, 125 U. S. 345; Fallbrook Irrigation
District vs. Bradley, *supra;* French vs. Barber Asphalt
Paving Co., 181 U. S. 324; State vs. A. C. L. Ry. Co., 56
Fla. 617; Davis vs. Fla. Power Co., 64 Fla. 246. The rule
as settled in this State in the case of Lainhart vs. Catts
et al., *supra*, is as follows: "In the decision of this case
we do not hold that the courts are not open to review
every exercise of legislative power or determination, for
it is said in Wagner vs. Leser, 239 U. S. 207; 60 L. Ed.
230, "we do not understand that there may not be cases
of such flagrant abuse of legislative power as would war-
rant the intervention of a court of equity to protect the
constitutional rights of land owners, because of arbitrary
and wholly unwarranted legislation. "There is a wide
difference between a special tax or assessment for local
improvements prescribed by the legislative body having
full authority over the subject, and one dependent upon
the judgment and action of bodies or instrumentalities
acting under delegated power." There are no allegations
in the bill of complaint which would warrant the court
in granting the relief prayed. Referring to the facts, we
find that the bill alleges that this Everglades Drainage
District embraces about four and a half million acres of
land. (p. 51 of transcript). The greater portion of this
land is alleged to be swamp and overflowed lands. The
bill of complaint shows (p. 52) that one of the tracts

owned by the complainant embraced within this Ever-
glades district, the tract described as No. 3, containing
five acres, more or less, and assessed at 25c, is dry, h'am-
mock or upland, and can and will receive no benefit,
whatever, from the proposed work of drainage and other
improvements provided for, in and by the said acts. Thus
we find that out of four and a half million acres of swamp
and overflow lands embraced within this drainage district
there are only five acres of hammock or upland, belong-
ing to appellant, that are specifically designated and de-
scribed as land that should not be embraced in the dis-
trict because it would receive no benefits therefrom. We
cannot, therefore, by any reach of the imagination con-
clude that the assessment made by the Legislature is so
devoid of any reasonable basis as to be essentially arbi-
trary and an abuse of power.

It is argued by the appellant that Chapter 7862, Laws
of Florida, changed the boundaries of the former drain-
age district and revised his taxes for drainage purpose
upwards on his lands embraced in the said district. It
is immaterial whether the district created by Section 1,
Chapter 7862, placed a higher assessment on the lands
embraced in the district or not. It has already been
stated that the Legislature had the power to pass this law.
Having the power to pass it, it also had the power to fix
the amount of the assessments, and the power to fix the
lines or boundaries wherever it saw fit so long as it did
not overstep the bounds of reason so as to make the law
arbitrary and an abuse of power. See Lainhart vs. Catts
et al., *supra*, text page 755; Houck et al. vs. Little River
Drainage District, *supra*.

It is further claimed in the bill of complaint that said
Chapter 6456, as amended by Chapter 6957, as amended

by Chapter 7862, of the Laws of Florida, does not provide for any notice or hearing by the owners of lands in said drainage district nor give them an opportunity of a hearing in respect to the selection of the lands assessed under said acts or upon which said acreage taxes are imposed, and alleges that the Legislature acted arbitrarily and without a hearing on the part of the said owners of lands within the said drainage district. This position is not in harmony with the law. There is no provision of the law whereby the Legislature was required to give the owners any notice before enacting the law. The Legislature being presumed to have performed its duty correctly is presumed to have made an investigation for itself and to have determined for itself, before the passage of the act complained of, what land should be embraced within the drainage district and what assessment should be made and what benefits would be received by the owners of the land. The question is not one of a delegation of authority by the Legislature to some board or commission to levy the assessment, for under a delegation of the power to some other instrumentality or board it is probable that notice would have been necessary to the owners, but where the district was created by the Legislature, and the assessment was made by the Legislature, and all things done directly by the law-making body, as was done in this case, the legislative will is supreme and there can be no question of failure to give notice. Fallbrook Irrigation District vs. Bradley, *supra;* Lainhart vs. Catts, *supra;* Wagner vs. Baltimore, 239 U. S. 207.

It is further claimed by the appellant that this act deprives him of his property without due process of law. We do not think this complaint is well founded, for if the act of the Legislature is valid and not in contravention of any of the provisions of our Constitution or the

Federal Constitution, then it cannot be said that it deprived the appellant of due process of law. "The provisions of the organic law that no person shall be deprived of life, liberty or property without due process of law, nor denied the equal protection of the laws, are not intended to hamper ·the State in the discretionary exercise of any of their appropriate sovereign governmental powers unless substantial private rights are arbitrarily invaded by illegal or palpably unjust, hostile and oppressive exactions, burdens, discriminations or deprivations." Courts·have no power to annul a legislative enactment on the ground that it is unreasonable in its terms or in its operation, when the statute does not, because of arbitrary unreasonableness, conflict with the superior force of the Constitution as to higher law." Dutton Phosphate Co. vs. Priest, 67 Fla. 371; Wagner vs. Baltimore, 239 U. S. 207. Houck et al. vs. Little River Drainage District, supra.

It is argued by the appellant that Chapter 6456, as amended by Chapter 6957, of the Laws of Florida, lay down specific provisions for the issuance of bonds and the assessment of taxes thereunder, while Chapter 7862 of the Laws of Florida repeals all of the provisions of the said Chapter 6456, as amended by Chapter 6957, Laws of Florida, relative to the·issuance of bonds and assessments of taxes, thereby impairing a vested right of appellant, he having purchased with the understanding that the rate of taxation was fixed thereon. The appellant does not give a clear or definite statement as to how he obtained such an understanding. It is not stated whether he had this understanding with the party from whom he purchased or whether with some State official, or whether he got this understanding from Chapter 6456, Laws of Florida, as amended by Chapter 6957, Laws of

Florida. In either case the objection of the appellant to the statute would be futile. There is nothing written in Chapter 6957, Laws of Florida, upon which the appellant could base a reasonable claim that the rates of taxation on the land he purchased were fixed forever. These are matters which are always subject to change, and every person who purchases real estate in Florida does so subject to the governmental power and authority to raise or change the taxes, to issue bonds that would be a lien on the land, to create special tax school districts; and to create special road and bridge districts, any and all of which would have the effect of increasing the rate of his taxation.

The appellant further claims in his bill that Section 4 of the said act conferring the power of eminent domain is unconstitutional because it is alleged to be in violation of Section 29, Article 16, of the Constitution. This identical question was before the court in the case of Lainhart vs. Catts, supra, and the court held that it was useless to determine the question, as no fact was alleged in the bill involving the exercise of this right. The same situation exists in the present case, for there is no allegation in the bill of complaint alleging any right of the appellant is being invaded under this section; therefore, it is useless to pass upon the question of whether Section 4 is unconstitutional or not. As said in Lainhart vs. Catts case, "The Court will not pass upon the constitutionality of a part of an act in a proceeding which does not involve the part which is claimed to be unconstitutional, if the part remaining is complete and operative within itself."

The complainant further objects to the said statute because the act authorizes the drainage commissioners to expend the proceeds derived from the special assessments

without a special appropriation of the Legislature is in violation of Section 4, Article 9, of the Constitution, providing "that no money shall be drawn from the treasury except in pursuance of appropriations made by law." This identical question was raised in the case of Lainhart vs. Catts et al., supra, text p. 756, and was decided by the court adversely to the contention of the appellant here, and we see no reason for a repetition.

The objection that the title to the Act is in contravention of Section 16 of Article 3 of the Constitution is not well founded. It is claimed that the title to the Act relates to and contemplates a general law for the establishment of drainage districts throughout the State, and that the body of the Act establishes only a single drainage district. This contention is unwarranted by the facts. We have carefully examined the respective titles to Chapters 6456-6597 and 7862, and none of them refer to the creation of more than one drainage district. The title to Chapter 6456 was involved in the case of Lainhart vs. Catts, et al, *supra,* text 757, and it was upheld by the court in that case, and we can find no defect, or supposed defect, in the title to Chapters 6957 and 7862 that was not disposed of in that case. The appellant may have been misled because of the language in Chapter 6456 reading as follows, "An Act to establish the Everglades Drainage District in this State," and by the language in the title to Chapter 6957, which is a repetition of that just quoted, and by the language in the title to Chapter 7862, which reads as follows, "Relating to the creation of the Everglades Drainage District of the State of Florida." It will be noticed, however, that immediately following this language in each title are the words "defining *its* boundaries." It is quite clear, therefore,

that the title of the Act refers to the creation of a single drainage district, and not a number of drainage districts in the State of Florida. If the drainage district had been intended to cover drainage districts throughout the entire State of Florida, the title would not have contained the words "defining *its* boundaries." The language in the body of the Act is not in any manner inconsistent with anything contained in the title. It has already been held by this court that "if the title of an Act fairly gives notice of the subject of the Act so as to reasonably lead to an inquiry into the body thereof, it is all that is necessary." The title need not be an index to the contents of the Act. Butler vs. Perry, 67 Fla. 406; Moodie vs. Bryan, 50 Fla. 293; Lainhart vs. Catts, et al *supra.*

Counsel for appellant in their brief complain that the said Acts require the tax collector to collect the local tax along with the State and county taxes, and that the local tax is put on the tax roll and collected at the same time that county taxes are collected, and the collector is not authorized to collect the county taxes without collecting this drainage tax; and then the brief contains this further assertion, "This interferes with the collection of the State and county taxes, and should be condemned." If by this claim counsel are seeking to show that the State and county taxes are intermixed and intermingled with the drainage tax, then, we can only say that counsel are mistaken in the facts. The statute Section 1 of Chapter 7305, Laws of Florida, provides for the method of assessment of drainage taxes, and says, "such tax or assessment shall be entered upon the tax roll in a separate column, under the head of 'Drainage Taxes,' opposite the name of the person or persons or corporation owning such land," except where the lands are not returned for assessment by the owner or his legal

representative, and in that case, to be assessed as "unknown." This fixes the method so that the drainage tax is segregated from the State and county tax, and we do not think it is subject to the objection argued. Neither is it the law that the tax collector cannot collect the drainage tax without collecting the State and county taxes, nor that the Collector cannot collect the State and county tax without collecting the drainage tax, for in Section 10 of Chapter 6456, as amended by Chapter 6957, as amended by Chapter 7304, Laws of Florida, it is provided that "said tax collector is authorized to receive drainage taxes and issue receipts therefor without requiring the payment of other taxes at the time of payment of such drainage taexs." The sale is also entirely separate and distinct. The lien given is not superior to the lien for State and county taxes, and we are unable to see where this law interferes with the collection of State and county taxes, and counsel in their brief have offered no authorities or argument which would throw any light upon the subject. In the absence of any showing as to why and how the law interferes with the collection of State and county taxes, we deem it proper to hold that the position of counsel in this respect is not well taken.

Finding no error in the ruling of the court in sustaining the demurrer to the bill of complaint, the order of the court below is affirmed.

BROWNE, C. J., AND TAYLOR AND WHITFIELD, J. J., AND PERKINS, CIRCUIT JUDGE, concur.

ELLIS AND WEST, J. J., disqualified.